Henri Milton DYMENSTEIN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1210.

Court of Appeals of Alaska.

May 23, 1986.

Rehearing Granted in Part and Opinion Amended June 23, 1986.

Thomas A. Flippen, II, Boyko, Davis, and Dennis, Anchorage, for appellant.

Jeffrey W. Cole, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

After entering a plea of no contest, Henri Milton Dymenstein was convicted of three counts of sexual assault in the first degree, pursuant to former AS 11.41.-410(a)(3). Dymenstein was sentenced by Superior Court Judge Rene Gonzalez to six

years on each count, to be served consecutively, for a total sentence of eighteen years. He appeals, contending that his sentence is excessive. We affirm.

## FACTS

While investigating an incest case in Los Angeles, the Los Angeles Police discovered letters referring to Dymenstein as a person who had a sexual interest in children. A police officer wrote to Dymenstein, feigning a sexual interest in children, and Dymenstein responded, acknowledging sexual activity with minor girls. The letters were sent to the Anchorage Police Department. Anchorage police officers obtained a warrant and searched Dymenstein's house, where they found a large collection of commercial and noncommercial pornographic material, including magazines, snapshots, movies, and videotapes. Some of the material was child pornography. The police also found children's toys and sexual aids. Letters to Dymenstein from a man in Germany named Karl were found, in which Karl referred to Dymenstein's sexual relationship with N.C. and indicated an interest in having sexual relations with her.

N.C. was a ten-year-old girl who lived with her father in the apartment building where Dymenstein lived and had a business. N.C. had been neglected and sexually abused by her father and by various other adults, with her father's knowledge. Dymenstein had taken an interest in her, teaching her hygiene, manners, and good study habits, and providing her with clothes, food, and a place to stay. He also took advantage of her for his own sexual gratification. At the time of the search, N.C. was removed from Dymenstein's home and placed in the state's custody.

N.C. was interviewed on various occasions. Her story about her relationship with Dymenstein initially changed with each interview. Ultimately, however, she asserted that Dymenstein started touching her sexually when she was ten years old. He began by hugging and kissing her and touching her buttocks and breasts. Later, he directed her to take off her clothes, and touched and kissed her on her breasts. N.C. said that she would spend the night with Dymenstein, and they would drink wine, get intoxicated, and have intercourse. She claimed that the intercourse would occur daily, sometimes with Dymenstein alone and sometimes with Dymenstein and a third party.

N.C. also stated that Dymenstein had shown her pornographic books and films and had directed her to pose nude in sexual poses for photographs. She said that Dymenstein also took pictures of her friends and had intercourse with at least one of them.

While the indictment named only N.C. as Dymenstein's victim, the state presented evidence at the sentencing hearing indicating that there had been other victims as well, including P.G., who was Dymenstein's niece, and J.T. J.T. testified that, when she was sixteen years old, Dymenstein had shown her pornographic literature and had taken pictures of her semi-nude. She also stated that she had engaged in sexual relations with Dymenstein, both alone and with a third party.

## DISCUSSION

Dymenstein initially alleges that the sentencing court erred in permitting a counselor to offer hearsay statements attributed to N.C., concerning the nature and extent of Dymenstein's misconduct. At the sentencing hearing, Pamela Kirk, a counselor of sexually abused children, testified about statements N.C. made to Kirk about N.C.'s sexual relationship with Dymenstein. Dymenstein objected on hearsay grounds, and the objection was overruled.

 Hearsay statements are generally admissible in sentencing proceedings, so long as they are verified. To be verified, the statements must be corroborated or substantiated by supporting data or information. *Nukapigak v. State*, 562 P.2d 697 (Alaska 1977), *aff'd on rehearing*, 576 P.2d 982, 983 (Alaska 1978). The statements made by Kirk were corroborated by N.C.'s statements to other individuals and by her

grand jury testimony. They were also corroborated by the letters from Dymenstein to the Los Angeles Police officer, in which Dymenstein admitted having sexual relations with young girls, and the letters from Karl in Germany, which referred to statements made previously by Dymenstein about his daily experiences with N.C. Thus, the hearsay statement was properly admitted under *Nukapigak*.

■ Dymenstein also argues that Kirk should not have been allowed to offer her opinion concerning N.C.'s credibility. Kirk did give her opinion of N.C.'s credibility numerous times during the sentencing hearing, attempting to explain N.C.'s inconsistent statements and why N.C. took so long to admit all of the sexual abuse she had suffered. She explained that N.C.'s prior statements were consistent with the theory of "progressive admissions." Dymenstein, however, failed to object to Kirk's opinion of N.C.'s credibility the first time it was elicited. He objected only once: the second time Kirk said she believed N.C. Later, Dymenstein elicited Kirk's opinion twice again on cross-examination, yet he failed to object to the testimony or to request that it be stricken or disregarded.

A similar situation was presented to this court in *Colgan v. State*, 711 P.2d 533, 534–35 (Alaska App.1985). There, the same counselor testified that she believed the complainants: children who said they had been sexually assaulted by the defendant. In *Colgan*, as in the present case, no timely objection was made. This court analyzed the issue under the plain error rule, Criminal Rule 47(b). We found that, even if inadmissible, the testimony did not substantially prejudice Colgan's rights because Colgan was tried before a judge, rather than a jury, and because, in his findings, the judge focused on the credibility of the alleged victims' actual testimony and expressly rejected Kirk's opinion of their credibility.

In the present case, the testimony was presented to the court, rather than to a jury. It was presented for purposes of sentencing rather than for determination of guilt or innocence. There is nothing in the sentencing record to indicate that Judge Gonzalez placed inordinate weight on Kirk's testimony, and abundant evidence existed to corroborate N.C.'s claims that she had been sexually assaulted by Dymenstein. Under the circumstances, we find no plain error in the admission of Kirk's opinion of N.C.'s credibility.

Dymenstein argues next that the sentencing court erred in allowing Anchorage Police Officer Frank Feichtinger to testify as an expert on the subject of pedophilia. Feichtinger's expertise was based on police investigation rather than academic studies. He had worked on 300 cases involving sexually-victimized children while he was assigned to the Anchorage Police Department child sexual abuse unit and the sexual assault unit. Feichtinger had also completed a five-day FBI course on sexually exploited children and had done some limited research in the area.

■ Initially, we note that the Rules of Evidence are inapplicable to sentencing proceedings. A.R.E. 101(c)(2). Assuming that they provide useful guidelines for exercise of the sentencing court's discretion, however, Rule 702, governing expert testimony, is relevant. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

There is no requirement that a witness possess a particular license or academic degree in order to qualify as an expert. *Handley v. State*, 615 P.2d 627, 630–31 (Alaska 1980). The criterion in determining whether a person qualifies as an expert is whether the fact-finder can receive appreciable help from that person. *Id.* at 631. The trial court has great discretion in making a determination to let a person testify as an expert. *Id.* at 630. While Feichtinger's apparent expertise on the

subject of pedophilia was limited, it was not unreasonable for Judge Gonzalez to conclude that Feichtinger's experience could be helpful in the context of a sentencing hearing.

■ Moreover, as the state notes, Judge Gonzalez' conclusion that Dymenstein was sexually attracted to children is supported by other evidence: J.T.'s testimony, the correspondence between Dymenstein and other individuals who were interested in sexual relations with children, the child pornography found at Dymenstein's residence, and other expert testimony presented at the sentencing hearing. The court did not abuse its discretion in concluding that Dymenstein was sexually attracted to children or in relying on Feichtinger's testimony in doing so.

Dymenstein additionally argues that the court erred in considering his failure to admit responsibility for the acts. Dymenstein asserted that Judge Gonzalez should not have held Dymenstein's protestations of innocence against him in determining that his prospects for rehabilitation were poor. Throughout the proceedings, Dymenstein claimed he was innocent of any acts of sexual abuse and had pled no contest only to avoid going to trial.

■ An offender's unwillingness to accept criminal responsibility may properly be taken into account by the sentencing court. *Christian v. State*, 513 P.2d 664, 670 (Alaska 1973). If the sentencing judge believes that the defendant has committed perjury, the judge may consider that fact in determining the defendant's amenability to rehabilitation. *Campbell v. State*, 594 P.2d 65, 67–68 (Alaska 1979); *Fox v. State*, 569 P.2d 1335, 1338 (Alaska 1977); *DeMan v. State*, 677 P.2d 903, 911 (Alaska App. 1984); *Williams v. State*, 652 P.2d 478, 481 (Alaska App.1982). However, the defendant's unwillingness to accept responsibility should be only one of several factors to be weighed on the scale of justice. *Christian v. State*, 513 P.2d at 670.

■ In the present case, Dymenstein spoke at length to the court, denying any allegations that he had committed any sexual act with N.C. or any other minor. Dymenstein claimed that he was, in fact, attempting to apprehend sexual abusers of children to turn them over to the authorities. Judge Gonzalez did not expressly find that Dymenstein's explanation was false, but in light of the findings made, it is apparent that he so concluded. There was ample evidence to support this conclusion, particularly Dymenstein's correspondence with other individuals. It was not improper for Judge Gonzalez to conclude that Dymenstein was not amenable to rehabilitation based upon his consistent denial that the incidents occurred.

■ Dymenstein finally argues that his sentence of eighteen years is excessive. Dymenstein had pled no contest to three counts of first-degree sexual assault under former AS 11.41.410(a)(3). The offenses were class A felonies, former AS 11.41.-410(b), and carried maximum terms of twenty years, former AS 12.55.125(c). We have previously held that, in such cases, sentences ranging from three to six years for typical offenses and six to twenty years for aggravated conduct are appropriate. *State v. Brinkley*, 681 P.2d 351, 356 (Alaska App.1984). In this regard, we have stated:

> We use the phrase "typical offense" as a term of art to describe those situations in which statutory aggravating or mitigating factors are not established or if established would not, in the light of the totality of the circumstances, warrant a court considering a presumptive sentence. If the facts of a given case would not warrant aggravation or mitigation of a presumptive term, the case is a typical offense and the same factors would not warrant deviation from the *Austin* rule. An atypical offense, in contrast is one in which either aggravators or mitigating factors preponderate to the point that modification of an otherwise presumptive term would be warranted. We recognize that cases which could properly be sentenced under AS 12.55.165–.175 would also qualify as atypical offenses.

*Atkinson v. State,* 699 P.2d 881, 885 n. 5 (Alaska App.1985) (citations omitted).

A number of aggravating factors are present in this case: Dymenstein knew that the victim was particularly vulnerable, AS 12.55.155(c)(5), the conduct constituting the offense was among the most serious included in the definition of the offense, AS 12.-55.155(c)(10), and the offense was committed against a member of Dymenstein's household, AS 12.55.155(c)(18).

Additionally, the evidence shows a number of other non-statutory factors justifying an aggravated sentence. Dymenstein's offenses were part of a pattern of sexual misconduct that involved three children. His sexual abuse of N.C. continued over a lengthy period. He subjected N.C. to particularly deviant behavior—group sex and sexually explicit photography. Furthermore, as indicated by his German correspondence, and by the manner in which he initially obtained custody of N.C., Dymenstein displayed a callous willingness to exploit his victim and the members of her family for his own sexual gratification and for the benefit of others. Dymenstein's actions resulted in severe psychological damage to N.C., which will require an extended course of treatment. Finally, Dymenstein has refused to admit that he has any sexual or emotional problems, and he refuses to acknowledge any responsibility for his actions. There is convincing evidence in the record that Dymenstein's prospects for rehabilitation will remain poor so long as he continues to deny he has any problem.

We find this to be an aggravated case, justifying the eighteen-year sentence imposed below. The eighteen-year sentence is only three years longer than the fifteen-year benchmark we noted in *State v. Andrews,* 707 P.2d 900, 916–17 (Alaska App. 1985), *petition for hearing granted* (Alaska, December 6, 1985). The sentence is also shorter than sentences approved in *Seymore v. State,* 655 P.2d 786 (Alaska App.1982) (where we approved a twenty-year sentence for a defendant who had sexually penetrated his stepdaughter on three occasions, and who had previously been charged with other sexual contacts with her), and *Qualle v. State,* 652 P.2d 481 (Alaska App.1982) (where we approved a twenty-one year sentence for a defendant who had two children perform sexual acts with him and each other, who took sexually explicit pictures of them for sale to child pornographic magazines, and who had previously admitted to sexually assaulting his own three children).

We find *Seymore* and *Qualle* to be comparable to the present case. Having independently reviewed the entire sentencing record, we conclude that Judge Gonzalez was not clearly mistaken in sentencing Dymenstein to serve a total of eighteen years' imprisonment. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence imposed by the superior court is AFFIRMED.