**Alphonso HARRIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2916.

Court of Appeals of Alaska.

April 27, 1990.

Larry Cohn, Anchorage, for appellant.

Brent Cole, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Alphonso Harris was convicted by a jury of two counts of unlawfully exploiting a

minor, a class B felony, in violation of AS 11.41.455(a)(3), (6). Harris is a second felony offender. A second felony offender convicted of a class B felony is subject to a four-year presumptive term. AS 12.55.-125(d)(1). Harris received aggravated, concurrent, presumptive sentences of seven years with two years suspended. Harris appeals, contending that his sentence is excessive. We affirm in part and reverse in part and remand for resentencing.

## THE OFFENSE

Harris took four nude Polaroid photographs of the thirteen-year-old daughter of his companion, D.L., on three occasions during a one-week period in September or October of 1987. D.L. found the pictures and confronted Harris and Harris destroyed the pictures. Later D.L. discussed the matter with the victim, V.L., who acknowledged that Harris had taken the pictures. The pictures allegedly depicted the child nude and a man's hand in the photographs touching the child's vaginal area. D.L. and V.L. testified against Harris before the grand jury. Thereafter, they recanted and testified in his favor at trial. After Harris' conviction, D.L. and V.L. wrote letters to the court praising Harris and asking that he not be incarcerated. Approximately ten days prior to the time set for sentencing, D.L. and her attorney approached the state and D.L. confessed that she had lied at trial. She indicated that Harris had coerced her and her daughter into testifying and writing letters on his behalf. In his motion to reduce sentence, Harris objected to consideration of D.L.'s statement on the ground that it constituted surprise, that she had an extensive history of felony convictions, that the court was unaware that D.L. had been arrested the day before she made her statement, and that D.L. had continued to engage in criminal conduct after Harris' conviction. Therefore, because of these factors, Harris contends her hearsay statement should not be credited. At sentencing, Harris did not make a testimonial denial, nor did he expressly request the opportunity to cross-examine D.L. or ask for a continuance. However, in his motion to reduce sentence, Har-

ris requested an evidentiary hearing so that he could confront D.L.'s allegations.

## THE OFFENDER

Harris was thirty-two years old at the time of sentencing. He has completed high school and three years of college. He has been fairly steadily employed and was honorably discharged from the United States Army. As a juvenile, he was placed on probation for robbery and he has a minor misdemeanor record. More significantly, he was convicted of burglary in the second degree in 1983. Harris was on probation from April 26, 1983, until September 26, 1986. He initially received a suspended imposition of sentence. Two petitions to revoke probation were filed. On September 27, 1983, as a result of the first petition, Harris' probation was modified to require Harris to serve two years. The second revocation hearing, on December 14, 1983, resulted in the removal of the suspended imposition of sentence and Harris was sentenced to two years with the unserved portion suspended. While incarcerated he was found guilty of four infractions, two of them related to drug possession or use. Thereafter, Harris successfully completed the Akeela House residential program, complied with the conditions of his probation, maintained steady employment, and was released from probation.

## THE SENTENCE

The evaluation in the presentence report prepared by the Division of Corrections was generally unfavorable. It concluded as follows:

Alphonso Harris appears before the court for sentencing on two counts of Unlawful Exploitation of a Minor, a class B felony offense. He has had one other felony offense and one offense as a juvenile that would be considered a felony if committed by an adult. He acknowledges a substance abuse problem predating his graduation from the Akeela House program in 1986.

Mr. Harris was extremely evasive with the police officer in his interviews relat-

ing to the present offense, taking no substantive responsibility, and did not provide any explanations for his behavior. He persists in attributing his actions to a concern for the welfare of others. In fact, he reports substantial employment and volunteer activity in the helping profession and has worked with the handicapped, elderly, and youth, and indicates he plans to continue to do so, possibly the rest of his life. For the safety of the community, he should not be permitted to do so as long as he is under the custody or supervision of the State.

It appears reasonable to be concerned about the safety of minors or adults who are not in a position to fully protect themselves. Mr. Harris appears completely unwilling or unable to confront his true motivations and behavior and should be viewed as an unlikely prospect for rehabilitation. He should be considered a particular threat because he has the ability to present himself quite favorably. In pronouncing his sentence, I hope the court will first consider the need to isolate the defendant for the protection of the community and to reaffirm societal norms, then consider the need to deter others, and finally to deter the defendant and, by so doing, effect the rehabilitation of the defendant. However, it is not expected that Mr. Harris will do a turnabout in the near future.

At sentencing, Judge Johnstone indicated that he had initially been critical of the probation officer's evaluation but after considering the statement by D.L. to the police, he agreed entirely with the probation officer. Judge Johnstone discounted a psychological report prepared on Harris' behalf by Dr. Burke and the testimony of Ms. Harrington, a substance abuse counselor. Judge Johnstone found it particularly reprehensible that Harris had prevailed upon D.L. and her children to write letters on his behalf falsely stating the facts.

Judge Johnstone found one aggravating factor, that "the offense was a crime specified in AS 11.41 and was committed against ... a member of the social unit comprised of those living together in the same dwell-

ing as the defendant"; AS 12.55.155(c)(18). The court rejected as a mitigating factor the contention that "the conduct constituting the offense was among the least serious conduct included in the definition of the offense"; AS 12.55.155(d)(9). Judge Johnstone sentenced Harris to concurrent terms of seven years with two years suspended.

## DISCUSSION

Harris first argues that the sentencing court erred in crediting D.L.'s "unverified" statement that she and her children were coerced by Harris into testifying at trial and writing letters on his behalf. Harris points out that D.L. is a career criminal and has many convictions. He argues that he was not furnished her statement until the day set for sentencing and was unable to confront the statement on its merits. In an application to reduce sentence pursuant to Alaska Criminal Rule 35(a) (which was denied), Harris argued that D.L. had continued to commit crimes even after he was sentenced. Under the circumstances, Harris argues, reliance on D.L. denies him his right to confrontation under the state and federal constitutions.

■ Harris has never entered a testimonial denial of D.L.'s assertions. He did not specifically request an opportunity to cross-examine her at his sentencing hearing. In his application pursuant to Rule 35(a), he attached affidavits of current counsel and past counsel regarding D.L.'s criminal history and requested an opportunity to cross-examine D.L., but did not execute an affidavit denying the truth of her assertions. Under the circumstances, the trial court did not err in considering D.L.'s statement. *See Hamilton v. State*, 771 P.2d 1358, 1361–62 (Alaska App.1989); *Agwiak v. State*, 750 P.2d 846, 849 (Alaska App.1988); *Pickens v. State*, 675 P.2d 665, 671 (Alaska App.1984).

■ "Hearsay statements are generally admissible in sentencing proceedings, so long as they are verified. To be verified, the statement must be corroborated or substantiated by supporting data or information." *Dymenstein v. State*, 720 P.2d 42,

44 (Alaska App.1986). D.L.'s statements are in large part corroborated by her earlier testimony before the grand jury and, since she concedes lying in her testimony at Harris' trial, they would clearly be against her penal interests. *Cf.* A.R.E. 804(b)(3) (recognizing statements against penal interest as exceptions to the hearsay rule). There is no suggestion in the record that D.L. was given immunity in connection with her statement. Under the circumstances, the statement was sufficiently verified to be considered by the court in the absence of a testimonial denial by Harris. By the same token, the court also did not err in denying the Rule 35(a) motion which was based on cumulative evidence regarding D.L.'s character, but was not supported by a testimonial denial from Harris.

■ Finally, the ordinary remedy for late disclosure of relevant material by the prosecution is a continuance. *State v. Lewis,* 632 P.2d 547, 549 (Alaska App.1981). Harris did not ask for a continuance of the sentencing hearing. He has not suggested any reason why a continuance would not have solved any problem late disclosure presented. Under the circumstances we find no prejudicial error. Alaska R.Crim.P. 47(a).

Harris next argues that the trial court erred in failing to find that his "conduct was among the least serious conduct included in the definition of the offense"; AS 12.55.155(d)(9). Harris was convicted of two counts in violation of AS 11.41.455(a) which provides:

A person commits the crime of unlawful exploitation of a minor if, in the state and with the intent of producing a live performance, film, photograph, negative, slide, book, newspaper, magazine, or other printed material that visually depicts the conduct listed in (1)–(6) of this subsection, the person knowingly induces or employs a child under 18 years of age to engage in, or photographs, films, or televises a child under 18 years of age engaged in, the following actual or simulated conduct:

(1) sexual penetration;

(2) the lewd touching of another person's genitals, anus, or breast;

(3) the lewd touching by another person of the child's genitals, anus, or breast;

(4) masturbation;

(5) bestiality; or

(6) the lewd exhibition of the child's genitals.

Harris first argues that depiction of the lewd exhibition of a child's genitals is inherently less serious than depictions of the other conduct outlined in the statute. *See Lawrence v. State,* 764 P.2d 318 (Alaska App.1988) (exploitation and sexual abuse); *Dymenstein v. State,* 720 P.2d 42 (Alaska App.1986) (exploitation and sexual abuse); *Qualle v. State,* 652 P.2d 481 (Alaska App. 1982) (exploitation and sexual abuse plus commercial distribution of child pornography). The trial court rejected this argument in apparent reliance on *Juneby v. State,* 641 P.2d 823, 841, *modified on reh'g,* 665 P.2d 30 (Alaska App.1983) and *Walsh v. State,* 677 P.2d 912, 916–17 (Alaska App.1984).

In *Juneby,* we considered former AS 11.41.410(a) which prohibited sexual assault in the first degree and defined four circumstances under which such an assault could occur: (1) Sexual penetration with another person without the person's consent; (2) attempted rape resulting in serious physical injury to another person; (3) sexual penetration of a person under thirteen years of age by a person sixteen years of age or older; and (4) sexual penetration by a person eighteen years of age or older with a minor who is his son or daughter or who is entrusted by law to his care. The trial court considered nonconsensual penetration inherently the most serious conduct. We disagreed. We said:

We find [the trial judge's] interpretation of the aggravating factor defined in AS 12.55.155(c)(10) to be mistaken. All of the categories contained within the definition of sexual assault in the first degree under AS 11.41.410(a)(1)–(4) constitute the same offense for legal purposes. All four subparagraphs are treated as comprising the same offense; all

are categorized as class A felonies. Nothing contained in the statutory language of AS 11.41.410 or the legislative history of that provision suggests that the type of conduct listed in any one of the statute's four subparagraphs was meant to be inherently more serious than any of the others. To the contrary, the grouping of these four separate sets of conduct together under the same criminal heading, with identical classifications as class A felonies, is a forceful indication of the legislature's conclusion that all four subparagraphs were meant to be viewed as involving equally serious conduct.

Moreover, the legislative history of AS 12.55.155(c)(10) makes it clear that the drafters of this provision intended that the determination of whether an offender's conduct "was among the most serious conduct included in the definition of that offense" was to be based on an assessment of the specific facts of each case, viewed in relation to the most serious potential conduct constituting the offense charged.

*Id.* at 841 (footnote omitted).

Similarly, in *Walsh,* we found that manslaughter typically involves reckless conduct; knowing and intentional conduct only constitutes manslaughter when there is substantial provocation. We concluded that the legislature did not necessarily consider reckless manslaughter as a class of offenses less serious than knowing or intentional manslaughters mitigated by extreme provocation. *Walsh,* 677 P.2d at 917.

In *Juneby,* it is clear that former AS 11.41.410(a) involved substantially different offenses involving different societal norms all viewed as equally serious conduct. Thus, a prohibition on forceable rape protects a person's right to personal privacy and integrity and freedom from violence, while statutory rape affords protection to those who are too young to meaningfully consent or who stand in a special relation-

ship of subordination to their assailant. We did not mean to suggest in *Juneby* and *Walsh* that the legislature would never condemn behavior of greater or lesser significance in a single statute.

In contrast, AS 11.41.455(a) involves a single societal interest, protection of children from unlawful sexual exploitation. An assessment of the specific facts of each case viewed in relation to the most serious and least serious potential conduct constituting the offense charged would necessarily take into account the six types of conduct covered by the statute. *Juneby,* 641 P.2d at 841. In fact, under certain circumstances, photographing a child engaged in sexual penetration might make one an accomplice to sexual abuse of a minor in the first degree, an unclassified felony, in violation of AS 11.41.434:[1] Consequently, a trial judge could find by clear and convincing evidence that photographing an act of sexual intercourse involving children was a more serious offense than photographing a single child's genitalia. *See ·Braaten v. State,* 705 P.2d 1311, 1324–26 (Alaska App. 1985) (Singleton, J. concurring). The converse could be true as well, under some circumstances nude photography might be considered a least serious offense.

Taking pictures of this kind are particularly harmful because they may be a permanent record of a child's participation in sexual activity. *New York v. Ferber,* 458 U.S. 747, 758–59, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982). The Supreme Court quoted one authority as follows:

[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. Shourlin, *Preventing the*

---

1. AS 11.41.434 provides in part:

(a) An offender commits the crime of sexual abuse of a minor in the first degree if

(1) being 16 years of age or older the offender ... aids, induces, causes, or encourages a person who is under 13 years of age to engage in sexual penetration with another person[.]

*Sexual Exploitation of Children: A Model Act,* 17 Wake Forest, Forest L.Rev. 535, 545 (1981).

*Id.* at 759 n. 10, 102 S.Ct. at 3355 n. 10.

Alaska Statute 11.41.455 as originally enacted banned only commercial exploitation of children. It was amended in 1983 to prohibit exploitation for private purposes. Ch. 57, § 1, SLA 1983. It is significant that the legislature has made the taking of such pictures a class B felony, AS 11.41.-455(c), but their distribution a class C felony, AS 11.61.125(c) (child pornography). Thus, it is the creation of a permanent record that is the more serious crime and not its distribution or exploitation thereafter.

■■■ A sentencing court might be justified in finding that a violation of AS 11.41.-455 that involved nothing more than nude photography of a person under age eighteen was "least serious" if the concerns voiced in *New York v. Ferber* were not implicated. It was Harris' burden to prove that his conduct was least serious. *See* AS 12.55.155(f). We recognize that there is no direct evidence of distribution in this case and that upon discovery, Harris tore up the photographs in question. We are concerned that Harris indicated to the police that another man was present when the photographs were taken and that it was his hand touching the child's genitalia that was depicted in the pictures. Consequently, while commercial exploitation or mass distribution of pictures taken in violation of the statute might serve to enhance or aggravate the offense, we are not prepared to say on this record that taking four photographs on three separate days during a one-week period necessarily constitutes the least serious conduct within the contemplation of the statute. However, it is not entirely clear from the record why Judge Johnstone rejected the mitigating factor. It is possible he relied upon (1) Harris' conduct after the offense and (2) the fact that the victim was a member of Harris' household. Neither of these factors are appropriate in determining whether the mitigator applies, though these factors might be relevant if the mitigator were found in deciding whether to adjust the presumptive term downward. Under the circumstances, we deem it appropriate to remand this case to the trial court to reassess its determination regarding the mitigating factor.

■■■ Harris next argues that his presumptive sentence should not have been enhanced because of the aggravating factor that his victim was a member of the social unit with whom he lived. AS 12.55.-155(c)(18). He cites *Olp v. State,* 738 P.2d 1117, 1119–20 (Alaska App.1987), where we indicated that this aggravating factor would not justify imposing a sentence on a first felony offender greater than the presumptive sentence for a second felony offender convicted of sexual abuse of a minor. *Olp* is distinguishable, however, because Harris is not a first felony offender. The aggravating factor is significant in this case both because Harris used his position of authority to coerce the victim into posing for the photographs, and thereafter used his same position of authority to coerce her into recanting her testimony and perjuring herself before the jury. Under the circumstances, the trial court was not necessarily clearly mistaken in imposing concurrent sentences of seven years with two years suspended. *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). However, should the trial court find that the mitigating factor does apply, the sentence should be re-evaluated accordingly.

The sentence of the superior court is AFFIRMED in part and REMANDED for resentencing.