Alphonso HARRIS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6715.

Court of Appeals of Alaska.

May 28, 1999.

James T. LaVecchia, Assistant Public Advocate, and Brant G. McGee, Public Advocate, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

In 1987, Alphonso Harris took nude photographs of the 13–year–old daughter of his live-in companion. Even though Harris coerced the girl and her mother to recant their accusations and testify in his favor at trial, the jury convicted Harris of exploiting a minor.[1] Harris was sentenced to 7 years' imprisonment, but 2 years of this sentence were suspended on condition of Harris's good behavior during 5 years' probation. This court affirmed Harris's sentence in *Harris v. State*.[2]

In April 1996, the Department of Corrections filed a petition (and later a supplemental petition) to revoke Harris's probation. The petition (as supplemented) alleged that Harris had committed several violations of his conditions of probation. Following a hearing, the superior court found that most of these allegations were proved. The court revoked Harris's probation and ordered him to serve the previously suspended 2 years.

In this appeal, Harris asserts that the evidence against him was either factually or legally insufficient to prove the violations alleged in the petition. Harris also asserts that his sentence (2 more years to serve) is excessive. For the reasons explained here, we affirm the superior court's decision.

Three conditions of Harris's probation are pertinent to this appeal. First, Harris was ordered to "[c]omply with all municipal, state and federal laws." Second, Harris was ordered to "submit to testing for the use of controlled substances when required by the Probation/Parole Office." Third, Harris was ordered "to have no contact with minors under the age of sixteen without the written approval of the Probation/Parole Office." In its petition to revoke Harris's probation, the Department of Corrections alleged that Harris had violated these conditions by (1) assaulting his live-in companion, a woman named P.B.; (2) refusing to submit to testing for controlled substances; and (3) living in a residence with children under the age of 16 without notifying his probation officer and obtaining the officer's consent.

■ With regard to the allegation that Harris assaulted P.B., Harris contends that this assault could not lawfully provide the basis for revoking his probation. Harris points out that the State charged him with a separate criminal offense (fourth-degree assault) for this conduct, but the State later

---

**1.** AS 11.41.455(a).

**2.** 790 P.2d 1379, 1384 (Alaska App.1990).

dismissed the criminal complaint. Harris argues that "[w]hen the district attorney ... dismissed the complaint [charging] assault in the fourth degree, ... the basis for the [probation] violation ceased to exist[.]"

Harris is wrong. The supreme court decided this issue twenty years ago in *State v. DeVoe*.[3]

In *DeVoe*, a probationer committed a new offense (receiving and concealing stolen property); the State filed a criminal charge and also filed a petition to revoke DeVoe's probation. However, the State later dismissed the criminal charge. When the superior court judge assigned to the probation revocation matter learned that the criminal charge had been dismissed, he entered an order denying the revocation petition.[4] The judge ruled that it would be fundamentally unfair to revoke a defendant's probation for criminal conduct when separate criminal charges "have been dismissed or effectively withdrawn before trial".[5]

The supreme court reversed the superior court's ruling. The court held that a defendant's probation can be revoked for new criminal conduct even though separate criminal charges are never filed or are dismissed short of trial. "[The superior court's] denial of the [revocation] petition, solely because the state had elected not to charge and convict DeVoe in ... separate criminal proceedings, was a clear abuse of discretion."[6]

In light of *DeVoe*, we conclude that the superior court could properly consider Harris's assault on P.B. even though the State dismissed the separate criminal complaint.

■ With regard to the allegation that Harris refused to be tested for controlled substances, Harris again asserts that his conduct could not lawfully provide the basis for revoking his probation. Harris points out that the initial petition to revoke his proba-

tion was filed on April 1, 1996, and that his refusals to submit to drug testing occurred later—on April 9th and on May 8th. Harris contends that, once the initial revocation petition was filed on April 1st, he was no longer on probation—and thus no longer subject to the conditions of probation.

In *Gage v. State*[7], this court held that the running of a defendant's probation is tolled by the filing of a petition to revoke probation (if the allegations in the petition are later proved). In *Gage*, six months elapsed between the filing of the petition to revoke the defendant's probation and the superior court's final decision to revoke probation. Gage claimed that he was entitled to six months' credit against his probationary term—that he should be deemed to have been serving his probation during the six months between petition and disposition.[8] We rejected Gage's argument:

> [When] a petition to revoke probation ... is filed and the court subsequently determines that the alleged violation was in fact committed, there can be no legitimate justification for allowing the probationer to claim credit for time served on probation during the period between the filing of the petition and its ultimate adjudication.

*Gage*, 702 P.2d at 647–48.

At first blush, the holding in *Gage* may seem to support Harris's contention that his probation effectively ended (or was interrupted) when the Department of Corrections petitioned the superior court to revoke the probation. However, the issue in *Gage* was whether a defendant should receive credit against his period of probation for a period of interruption attributable to the defendant's violation of probation.

(This court reached a similar result in *O'Shea v. State*[9], where this court was asked

---

3.  560 P.2d 12 (Alaska 1977).

4.  *See id.* at 13.

5.  *Id.* at 14.

6.  *Id.* at 15. *See also Snyder v. State*, 496 P.2d 62, 63 (Alaska 1972) (appellant's probation could be revoked because of his commission of assault and battery in violation of conditions of proba-

tion, even though appellant had not been formally charged or convicted of the assault and battery).

7.  702 P.2d 646 (Alaska App.1985).

8.  *See id.* at 646–47.

9.  683 P.2d 286 (Alaska App.1984).

to decide whether a probationer who had left Alaska without permission should receive credit against his five-year period of probation for his two years' absence from Alaska—two years during which he was not, in fact, under probationary supervision. We held that "O'Shea's unauthorized absence from probation tolled the running of his probationary term"[10]—and thus, the superior court could lawfully extend O'Shea's probation by a corresponding two years, so that his violation of the terms of his release would not result in a benefit to him.[11])

*Gage* stands for the proposition that the filing of a petition to revoke probation will toll the running of probation if the probationer is later found to have violated the conditions of probation. But neither *Gage* nor *O'Shea* addressed the question posed by Harris: whether a probationer who is released on bail pending the conclusion of the revocation proceedings remains subject to the conditions of probation.

Neither *Gage* nor *O'Shea* suggests that a probationer is freed from the conditions of probation as soon as the Department of Corrections files a petition to revoke probation. In fact, such a result would run counter to the policy underlying both of those decisions. If the filing of a revocation petition released a probationer from the strictures imposed by the sentencing court, then the law would be rewarding the probationer for misconduct.

We therefore reject Harris's argument. Instead, we hold that Harris's conditions of probation continued in force while the petition to revoke his probation was pending before the superior court. Harris's refusals to submit to drug testing on April 9th and May 8th could properly be considered by the superior court when the court decided whether to revoke Harris's probation.

■ The third allegation was that Harris lived in a household with children under the age of 16 (P.B.'s son and daughter) without obtaining the approval of his probation officer. Harris does not deny that he violated this condition of his probation. However, he asserts that this violation "was a violation in name only" because the State never asserted that he engaged in any improper conduct with the children.

■ The fact that a probationer has violated the conditions of probation does not necessarily mean that the superior court should revoke probation and sentence the probationer to jail.[12] However, if the circumstances warrant, a court can revoke a defendant's probation even though the defendant's violation of probation does not constitute an independent crime.[13] Therefore, even though Harris may not have engaged in criminal conduct with P.B.'s children, Harris did violate the conditions of his probation by living with the children (without his probation officer's approval), and the superior court was entitled to consider this violation when deciding whether to revoke Harris's probation.

■ Harris further asserts that his probation officers were aware of his living arrangement for a long time before they filed the petition to revoke his probation. Harris argues that it is unfair to allow the superior court to revoke his probation for conduct that his probation officers silently condoned.

From the record, it is unclear whether the probation officers were aware that Harris was living with the children. P.B. testified that she had been "led to believe" that the probation officers knew that Harris was living in the same household with the children and "chose to let it be that way". However, P.B. did not identify the person or persons who had "led [her] to believe" this. The State asserts that this person could have been Harris.

We need not resolve this factual issue. Harris does not claim that his probation officers misled him into thinking that he had their approval for the living arrangement—and that the only violation was a technical one, in that the probation officers gave Harris verbal approval rather than the written

---

10. *Id.* at 288.

11. *See id.* at 288–290.

12. *See Trumbly v. State,* 515 P.2d 707, 709 (Alaska 1973); *Andrew v. State,* 835 P.2d 1251, 1254 (Alaska App.1992).

13. See, for example, *Trumbly, supra.*

approval specified in the conditions of his probation. Rather, Harris claims only that his probation officers were aware that he was living with children and they failed to take action for a long time. This being so, then even if we assume the truth of Harris's assertion, the probation officers' belated failure to take action would not excuse Harris's violation of this condition of his probation.[14] The superior court could properly take this violation into account when deciding whether to revoke Harris's probation.

■ Harris's final claim is that, even in light of all these violations of probation, the superior court was clearly mistaken to sentence Harris to serve the entire remaining 2 years of his sentence.

Harris's offense, exploitation of a minor, is a class B felony.[15] Harris was a second felony offender when he was sentenced for this crime [16]; he therefore faced a presumptive term of 4 years' imprisonment.[17] At Harris's original sentencing, the superior court found one aggravating factor: that Harris had committed the offense upon a child living in the same social unit as himself.[18] Based on this aggravator, the superior court adjusted the presumptive term upward, sentencing Harris to serve 5 years in prison, with an additional 2 years suspended.

Now that Harris's probation has been revoked and he has been ordered to serve the previously-suspended 2 years, his total sentence for exploitation of a minor is 7 years to serve. Harris argues that this sentence is excessive.

Harris first argues that his sentence violates the rule announced in *Austin v. State.*[19] In *Austin,* this court held that the superior court should normally sentence a first felony offender to a lesser sentence than the presumptive term that would apply if the defendant were a second felony offender.[20] Later, in *Brezenoff v. State* [21], we clarified that the *Austin* sentencing limit could be exceeded only when the State proved one or more of the aggravating factors listed in AS 12.55.155(c) or extraordinary circumstances as defined in AS 12.55.165.[22] The *Austin-Brezenoff* rule is now codified in AS 12.55.125(k).

Harris argues that *Austin* stands for yet another rule: that second felony offenders should normally receive a more favorable sentence than the presumptive term that would apply if the defendant were a third felony offender. The quick answer to this contention is that *Austin* does not address this issue.

However, even if *Austin* did stand for the proposition Harris asserts—the proposition that, absent aggravating factors or extraordinary circumstances, second felony offenders should receive a more favorable sentence than the presumptive term for third felony offenders—this rule would not help Harris. As noted above, the superior court found an aggravating factor at Harris's original sentencing; that is how Harris, a second felony offender, ended up with a sentence more severe than the 4–year presumptive term provided for second felony offenders. Even under the rule that Harris argues for, that same aggravating factor would authorize the

**14.** Compare *Haggren v. State,* 829 P.2d 842 (Alaska App.1992), where we held that a person can be convicted of violating the law even if the person relied on erroneous legal advice proffered by a law enforcement officer. "[W]e reject Haggren's argument that the State was estopped from prosecuting him for violating the regulation.... [T]he fact that Haggren may have relied on bad legal advice from Officer Titus does not provide Haggren with a defense to the charge. While the case might be different if Titus or some other state official had ordered Haggren to put his drift net in the water or had directed Haggren to continue operating his drift net after Canady deployed the set net, this did not happen here." *Id.* at 844.

**15.** AS 11.41.455(c).

**16.** *See Harris,* 790 P.2d at 1380.

**17.** AS 12.55.125(d)(1).

**18.** *See Harris,* 790 P.2d at 1381; AS 12.55.155(c)(18).

**19.** 627 P.2d 657 (Alaska App.1981).

**20.** *See id.* at 657–58.

**21.** 658 P.2d 1359 (Alaska App.1983).

**22.** *See id.* at 1362.

superior court to consider sentences more severe than the 6–year presumptive term provided for third felony offenders.

■ Moreover, we have ruled that "when a history of probation violations establishes a person's poor prospects for rehabilitation, that fact may be deemed an extraordinary circumstance justifying the imposition of a sentence in excess of the *Austin* limits." [23] Thus, leaving aside the aggravating factor found at Harris's original sentencing, Harris's conduct since that time could constitute an independent reason for exceeding the normal *Austin* sentencing limit.

The relevant question in such cases is whether the totality of the circumstances upon revocation of probation would have justified a sentence in excess of the *Austin* limits if known when the original sentence was imposed. Before finding that an offender's probation violations justify a total sentence exceeding the applicable presumptive term for a second felony offender, the sentencing court must conclude that the offender's poor conduct on probation, when viewed in conjunction with all of the originally available sentencing information, renders the case even more serious—and therefore deserving of even greater punishment—than the case of a typical second felony offender committing a typical offense of the same class.

*Chrisman*, 789 P.2d at 371 (citation omitted).

Because no special legal rule restricted the superior court's sentencing discretion, we therefore turn to the remaining issue: whether, under the circumstances of Harris's case, a sentence of 7 years to serve is clearly mistaken. [24]

■ When deciding whether to revoke a defendant's probation and impose some or all of the defendant's previously suspended jail time, a judge must evaluate all of the circumstances of the case in light of the *Chaney* criteria. [25] The relevant circumstances include the defendant's original offense, the defendant's conduct on probation, and the sentences imposed on similar defendants committing similar crimes. [26]

Harris was originally convicted for taking nude photographs of his live-in companion's thirteen-year-old daughter. These photographs depicted the nude child with a man's hand touching her vaginal area. [27] As already noted, Harris's offense was aggravated because he resided in the same social unit as the victim. After Harris was indicted for this offense, he coerced his companion and her daughter into recanting their accusations, testifying in his favor, and writing letters to the court on his behalf. [28]

Harris conceded that he violated his probation by leaving the state five times without notifying his probation officer. And, as described above, Harris assaulted P.B., he failed to submit to drug testing at his probation officer's request, and he had continual contact with minors without his probation officer's permission.

While in prison, Harris was terminated from sex offender treatment after only one month due to his lack of commitment to the program, his refusal to accept responsibility for his misconduct, and his tendency to portray himself as the victim. Following his release from prison, Harris did participate in sex offender treatment for two years, but during all this time he persisted in denying his offense. The treatment provider assessed Harris as posing a high risk for recidivism.

In sentencing Harris to serve the remaining 2 years, Superior Court Judge Harold M. Brown stated that his decision was based on the seriousness of Harris's original offense

**23.** *Chrisman v. State,* 789 P.2d 370, 371 (Alaska App.1990).

**24.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to affirm a sentencing decision unless the decision is clearly mistaken).

**25.** *See Crouse v. State,* 736 P.2d 783, 786–87 (Alaska App.1987); *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970). *See also Moya v. State,* 769 P.2d 447, 448 (Alaska App.1989).

**26.** *See Crouse,* 736 P.2d at 787; *Witt v. State,* 725 P.2d 723, 724 (Alaska App.1986).

**27.** *See Harris,* 790 P.2d at 1380.

**28.** *See id.*

and Harris's conduct on probation, especially the assault and the on-going contact with minors. Based on this record, Judge Brown concluded that Harris had poor prospects for rehabilitation and that imposition of the remaining 2 years was necessary to protect society and to deter others from similar conduct. Although Judge Brown's sentencing remarks are brief, they demonstrate that the judge considered the relevant circumstances of Harris's case in light of the *Chaney* factors.

Based on our independent review of the record, we conclude that Judge Brown was not clearly mistaken when he decided to impose the remaining 2 years of Harris's sentence, making Harris's total sentence 7 years to serve.

The judgement of the superior court is AFFIRMED.