202 P.3d 521

**STATE of Arizona, Appellant,**

v.

**Leonel MARTINEZ, Appellee.**

**No. 1 CA–CR 07–1070.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 16, 2008.

Andrew P. Thomas, Maricopa County Attorney By Elizabeth Burton Ortiz, Deputy

County Attorney, Phoenix, Attorneys for Appellant.

James J. Haas, Maricopa County Public Defender By Terry Reid, Deputy Public Defender, Phoenix, Attorneys for Appellee.

## OPINION

GOULD, Judge.[*]

¶1 The State appeals the trial court's dismissal of an indictment, which charged Leonel Martinez ("Martinez") with aggravated assault, a class four felony. In an issue of first impression in this state, this court is asked to determine whether a prosthesis is a "body part" for purposes of Arizona's aggravated assault statute, Arizona Revised Statutes ("A.R.S.") section 13–1204(A)(3) (Supp. 2007).[1] We hold that a prosthesis is not a body organ or body part under the plain meaning of A.R.S. § 13–1204(A)(3). However, we also hold that damage or destruction of a prosthesis may, under certain circumstances, cause "temporary but substantial loss or impairment of any body organ or part" under A.R.S. § 13–1204(A)(3). Whether this statutory element can be satisfied is a jury question. Accordingly, we reverse the dismissal and remand for further proceedings.

### I. FACTS AND PROCEDURAL HISTORY

¶2 The parties do not dispute the facts of the case. On May 29, 2006, after getting into an argument with his ex-girlfriend ("Victim"), Martinez took Victim to a remote area and repeatedly struck her for several minutes. Martinez punched Victim so hard that her permanent dental bridge[2] dislodged, and the artificial tooth attached to the bridge broke off. As a result, Victim could no longer chew or eat certain foods without suffering pain in her mouth. The State charged Martinez with aggravated assault, a class four felony, for causing "a temporary but substantial loss or impairment of any body organ or part, to [Victim]."

¶3 Prior to trial, Martinez filed a motion to dismiss, arguing that the indictment was insufficient as a matter of law because a dental prosthesis is not a "body part" within the meaning of the aggravated assault statute. In granting Martinez's motion to dismiss, the trial court concluded that, although the facts were sufficient to support a misdemeanor assault charge, Victim's injury did not fall within the parameters of the aggravated assault statute. The trial court reasoned that Victim's dental bridge, like other prosthetic devices, could be replaced, whereas an actual body part, such as a limb, could not. Of particular significance to the trial court was the fact that Victim's remaining normal teeth remained intact.

¶4 The State timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and –4032(1) (2001).

### II. DISCUSSION

■ ¶5 A person commits aggravated assault if he assaults[3] another person and, in doing so, causes "temporary but substantial loss or impairment of any body organ or part." A.R.S. § 13–1204(A)(3). The State contends that the trial court erred in dismissing its indictment against Martinez because Victim's broken dental bridge and artificial tooth, in addition to the accompanying limitations on the use of her mouth, constitute a temporary but substantial loss or impairment to a body part. Martinez argues that the

---

[*] Pursuant to Article VI, Section 3 of the Arizona Constitution, the Arizona Supreme Court designated the Honorable Andrew W. Gould, Judge of the Yuma County Superior Court, to sit in this matter.

1. We cite the current version of the applicable statute because no revisions material to this decision have since occurred.

2. Dental bridges "bridge the gap created by one or more missing teeth. A bridge is made up of two crowns for the teeth on either side of the gap ... and a false tooth/teeth in between." WebMD, http://www.webmd.com/oral-health/dentalhealth-bridges (last visited September 10, 2008).

3. "A person commits assault by [i]ntentionally, knowingly or recklessly causing any physical injury to another person." A.R.S. § 13–1203(A)(1) (2001).

trial court correctly interpreted A.R.S. § 13–1204(A)(3), and that construing the statute to encompass prosthetic body parts not only expands the scope of but is also counter to the plain meaning of the statute. Generally, we review a trial court's decision granting a motion to dismiss for an abuse of discretion. *State v. Wood*, 198 Ariz. 275, 277, ¶ 6, 8 P.3d 1189, 1191 (App.2000). However, when the matter is one entirely of statutory interpretation, we review *de novo*. *Id.*

¶ 6 A prosthesis, such as Victim's bridge/artificial tooth, is not a body organ or body part under the plain meaning of A.R.S. § 13–1204(A)(3). "Words and phrases in a statute are to be given their ordinary meaning unless it appears from the context of the statute … that a different meaning is intended." *State v. Tiscareno*, 190 Ariz. 542, 543, 950 P.2d 1163, 1164 (App.1997) (quoting *State v. Takacs*, 169 Ariz. 392, 397, 819 P.2d 978, 983 (App.1991)). The ordinary meaning of the term "body part" includes flesh and bone that is part of the human body, and not foreign objects, such as prosthetics, that are inserted into or affixed to the body. *See State v. Schaffer*, 202 Ariz. 592, 596, ¶ 15, 48 P.3d 1202, 1206 (App.2002) (stating that use of a prosthetic to commit an assault is "unlike the use of a fist or other body part made of flesh and bone"). Moreover, this court has previously held that a "prosthesis is not a 'body part,' but is a device designed to be used as a substitute for a missing body part." *Id. See also State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989) (distinguishing between "objects" that can be used as dangerous instruments for the purposes of A.R.S. § 13–604, and fists, which may not constitute dangerous instruments because they are part of a person's body).

¶ 7 However, our analysis does not end here because an assault that damages a prosthetic device can also cause a substantial impairment to a body part.[4] A prosthesis does not merely replace an otherwise missing or impaired body part. A prosthesis can also enable other body parts to function as they had before the loss or impairment. *See* Merriam–Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/prosthesis (last visited September 10, 2008) (defining "prosthesis" as "an artificial device to replace or augment a missing or impaired part of the body"); *Schaffer*, 202 Ariz. at 594 n. 4, ¶ 5, 48 P.3d at 1204 n. 4; *Regnier v. Indus. Comm'n*, 146 Ariz. 535, 538–39, 707 P.2d 333, 336–37 (App.1985) (stating that prosthetic measures are designed to "replace lost body function").

¶ 8 Damage or destruction of a prosthesis may, depending upon the function and location of the prosthesis, impair the functioning of a body part. For example, in this case the damage to Victim's dental prosthesis may have impaired her ability to use her mouth to chew and eat certain foods.[5]

¶ 9 We hold that depending on the facts and circumstances of the case, damage or destruction of a prosthesis may result in "temporary but substantial loss or impairment of any body organ or part" under A.R.S. § 13–1204(A)(3). Whether this statutory element is satisfied in any particular case is a jury question. There may be instances where an assault only damages a prosthetic device, and there is no resulting impairment to a body part. In contrast,

---

4. Although the issue is not before the court today, damaging or destroying a prosthesis may also cause "temporary but substantial disfigurement" in violation of A.R.S. § 13–1204(A)(3). For example, under the facts of this case, the Victim's missing tooth and/or dislodged bridge may have visibly disfigured the victim's appearance. *See State v. Garcia*, 138 Ariz. 211, 214, 673 P.2d 955, 958 (App.1983) (stating that disfigurement sufficient to establish a serious physical injury must "impair the visible appearance of the victim").

5. *See generally, Cronin v. State*, 454 A.2d 735, 736 (Del.1982) (holding that where assault damaged two of the victim's teeth and the victim was unable to chew certain food for four months after the assault, the victim's injuries constituted "serious physical injury"); *Walker v. State*, 742 P.2d 790, 791 (Alaska Ct.App.1987) (concluding that assault which broke the victim's jaw and prevented the victim from chewing food for six weeks was a "protracted impairment of a body member or organ" causing a serious physical injury); *State v. Mentola*, 691 S.W.2d 420, 422 (Mo.Ct. App.1985) (stating that a fracture of the victim's jaw that prevented the victim from chewing food for six weeks was sufficient for jury to find serious physical injury).

there may be other instances where the testimony of the victim and/or a medical professional shows that damage to a prosthetic device has significantly impaired a body part. Ultimately, it is up to the jury to decide the nature and degree of the impairment.

¶ 10 The failure to interpret A.R.S. § 13–1204(A)(3) in this manner would be contrary to the statutory intent and could produce absurd results. *See State v. Flores*, 160 Ariz. 235, 239, 772 P.2d 589, 593 (App.1989) ("In construing a statute, courts should give the statute a sensible construction which will accomplish legislative interest and ... avoid absurd results."). If the statute's protection were limited to biological body parts, only misdemeanor assault could be charged against defendants who inflict severe and debilitating impairments on victims with prosthetics. For example, a defendant could assault a victim, causing the victim's hip to break and face aggravated assault charges, but the same defendant could only be charged with misdemeanor assault if the victim had an artificial hip joint destroyed in the assault. In both instances, the victim's ability to walk would undeniably be impaired. One could imagine similar scenarios where a victim has an artificial knee or an artificial heart. Interpreting A.R.S. § 13–1204(A)(3) in this manner would be inconsistent with the statute's purpose to provide "a tiered structure of punishment based on the *severity of the injury*." *State v. George*, 206 Ariz. 436, 441, ¶ 8, 79 P.3d 1050, 1055 (App.2003) (emphasis added).

### III.  CONCLUSION

¶ 11 The judgment of the trial court is reversed. The charge against Martinez is reinstated. The case is remanded for further proceedings consistent with this opinion.

CONCURRING: MAURICE PORTLEY, Presiding Judge and JON W. THOMPSON, Judge.