399 P.3d 103

**IN RE JESSIE T.**

No. 1 CA-JV 16-0253

Court of Appeals of Arizona,
Division 1.

FILED 6/8/2017

Maricopa County Public Advocate's Office, Mesa, By Jason Kinsman, Counsel for Appellant

Maricopa County Attorney's Office, Phoenix, By Lisa Marie Martin, Counsel for Appellee

Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge Patricia A. Orozco (Retired) joined. Judge Donn Kessler concurred in part and dissented in part.

## OPINION

BROWN, Judge:

¶1 Jessie T. appeals the juvenile court's delinquency adjudication finding that he committed animal cruelty in violation of Arizona Revised Statutes ("A.R.S.") section 13–2910(A)(9) (subjecting an animal to cruel mistreatment), a class six felony. Because we conclude that the State failed to present sufficient evidence to support the court's adjudication, we modify the adjudication to reflect that Jessie committed the lesser-included offense of inflicting unnecessary physical injury to any animal, a class one misdemeanor, in violation of A.R.S. § 13–2910(A)(3).

## BACKGROUND

¶2 Police detectives discovered a Facebook photo of Jessie holding a pellet gun in one hand and a black cat by its tail in the other. The detectives also observed photos of a subsequent mutilation of what appeared to be the same cat. Jessie later admitted to a police officer that he shot the cat and did so "because it was a stray, and it was black." Jessie also admitted that after the shooting, he took pictures of a female friend disemboweling the cat.

¶3 The State filed a delinquency petition alleging Jessie intentionally or knowingly subjected an animal to cruel mistreatment in violation of A.R.S. § 13–2910.

A person commits cruelty to animals if the person ... [i]ntentionally or knowingly subjects any animal to cruel mistreatment.

. . .

"Cruel mistreatment" means to torture or otherwise inflict unnecessary serious physical injury on an animal or to kill an animal in a manner that causes protracted suffering to the animal.

A.R.S. § 13–2910(A)(9), (H)(2).

¶4 At the adjudication hearing, after the close of the State's evidence, Jessie moved for a judgment of acquittal pursuant to Rule of Procedure for the Juvenile Court 29(D)(2). The State responded that it had made a "showing beyond a reasonable doubt" because "[Jessie] did cause reasonable risk of death or serious injury to the cat, because he shot the cat and killed it." The court denied the motion.

¶5 In its closing argument, the State asked the juvenile court to focus on "inflicting unnecessary physical injury to an animal" and argued that Jessie "did create a reasonable risk of death or serious impairment, because he actually killed the cat." The State highlighted the Facebook photo of Jessie holding the cat by the tail as evidence that he "actually did kill the cat." Alternatively, the State argued that if it had failed to meet its burden of proving Jessie subjected the cat to cruel mistreatment under A.R.S. § 13–2910(A)(9), the court should adjudicate him delinquent for violating A.R.S. § 13–2910(A)(3), as a lesser-included offense that prohibits unnecessarily inflicting "physical injury" to any animal. Defense counsel countered that "killing an animal and causing serious physical injury [are] not the same." Counsel also pointed to the distinct elements of "killing" and "serious physical injury" within the statute to support his argument. The State responded that it was only attempting to prove that Jessie inflicted serious physical injury upon the cat—an injury that created a reasonable risk of death as evidenced by the cat's actual death.

¶6 The juvenile court found Jessie delinquent for subjecting the cat to cruel mistreatment by shooting it with a pellet gun. The court explained that it "d[id] not know which injury ultimately caused the death of

the cat, but [found] that [Jessie's] act of shooting the cat constituted 'serious physical injury' as contemplated by A.R.S. § 13–2910(H)(2) and A.R.S. § 13–105(39)." The court placed Jessie on probation and, over his objection, designated the offense a felony. This timely appeal followed.

## DISCUSSION

¶ 7 Jessie admits he shot the cat with a pellet gun, but contends that the juvenile court erred when it found him delinquent for cruel mistreatment because there was no evidence the cat suffered before it died. He argues that "the purpose of [A.R.S. § 13–2910(A)(9) ] is clearly to prevent the suffering of animals as each method of inflicting cruel mistreatment … requires suffering." The State does not address Jessie's statutory construction argument but summarily contends that by shooting the cat, Jessie inflicted serious physical injury because the cat died. Although the State was not required to prove "suffering" to support a delinquency finding under A.R.S. § 13–2910(A)(9), the State was required to prove that the pellet gun shot resulted in serious physical injury to the cat, and not merely that the cat died.

¶ 8 When reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence but review the evidence in the light most favorable to upholding the adjudication. *In re Kyle M.*, 200 Ariz. 447, 448, ¶ 6, 27 P.3d 804 (App. 2001). We will reverse for insufficient evidence only when there is a "complete absence of probative facts to support a judgment or when a judgment is clearly contrary to any substantial evidence." *Id.* at 448–49, ¶ 6, 27 P.3d 804.

¶ 9 We review de novo the interpretation of statutes. *Id.* at 448, ¶ 6, 27 P.3d 804. Our primary goal is to fulfill the purpose of the statutory provisions at issue. *State v. Cabrera*, 202 Ariz. 296, 299, ¶ 14, 44 P.3d 174 (App. 2002). If the statutory language is clear and unambiguous, we give it effect and do not employ other rules of statutory construction to discern the legislature's intent. *State v. Christian*, 205 Ariz. 64, 66, ¶ 6, 66 P.3d 1241 (2003). We also consider the statutory scheme as a whole and presume that the legislature does not include statutory provisions that are "redundant, void, inert, trivial, superfluous, or contradictory." *State v. Moerman*, 182 Ariz. 255, 260, 895 P.2d 1018 (App. 1994).

## A. Cruel Mistreatment—Serious Physical Injury

¶ 10 To support a delinquency finding for cruel mistreatment of an animal, the State was required to prove that (1) Jessie tortured or otherwise inflicted unnecessary serious physical injury on the cat, or (2) he killed the cat in a manner that caused protracted suffering. A.R.S. § 13–2910(A)(9), (H)(2). Because the State did not attempt to show that Jessie tortured the cat or killed it in a manner causing protracted suffering, we focus only on whether the State established beyond a reasonable doubt that Jessie inflicted unnecessary serious physical injury.

¶ 11 "Serious physical injury includes *physical injury that creates a reasonable risk of death*, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13–105(39) (emphasis added) (internal quotations omitted). "Serious physical injury" is an element of the offense that must be separately established beyond a reasonable doubt. *See State v. George*, 206 Ariz. 436, 441–42, ¶¶ 10–14, 79 P.3d 1050 (App. 2003).

¶ 12 According to the State, Jessie's admission that he intentionally shot the cat was sufficient to show he inflicted an injury on the cat and thereby created a reasonable risk of death. The State does not contend that Jessie caused the cat to suffer disfigurement, serious impairment of health, loss of limb or bodily organ, or protracted impairment of the function of any limb or bodily organ. For this reason, our focus is further limited to whether the State proved the cat suffered a significant injury that was sufficient to create a reasonable risk of death.

¶ 13 The plain language of the cruel mistreatment subsections at issue, A.R.S. § 13–2910(A)(9), (H)(2), indicates that killing an animal without proof of protracted suffering does not equate to causing serious physical

injury. *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131 (1993) (recognizing that "best and most reliable index of a statute's meaning" is its language). Killing an animal does not constitute cruel mistreatment unless the killing causes protracted suffering. *See State v. Pitts*, 178 Ariz. 405, 407, 874 P.2d 962 (1994) ("When possible, we interpret statutes to give meaning to every word."). Accepting the State's argument that evidence of death alone is sufficient to constitute "reasonable risk of death" would stretch the scope of the animal cruelty statute beyond its plain meaning. If the legislature intended that killing an animal without causing protracted suffering be categorized as cruel mistreatment, it presumably could have done so, but did not. Instead, the legislature's drafting choice shows that the crime of cruel mistreatment to animals requires proof of torture, serious physical injury, or killing with protracted suffering.

¶ 14 Moreover, the use of "serious physical injury" (A.R.S. § 13–2910(A)(9),(H)(2)) and "physical injury" (A.R.S. § 13–2910(A)(3)) to distinguish offenses within the animal cruelty statute is consistent with the statutory construction of the assault statutes, A.R.S. §§ 13–1203, –1204. Thus, this court's analysis in *George*, in which we considered the legal difference between "serious physical injury" and "physical injury" in the context of an aggravated assault conviction and a gunshot wound, is instructive. 206 Ariz. 436, 79 P.3d 1050.

¶ 15 The defendant in *George* shot a woman, causing a bullet to pass from the right side of her neck through her right underarm. *Id.* at 439, ¶ 2, 79 P.3d 1050. Evidence presented at trial showed the victim lost a significant amount of blood, some sensation, strength and muscle control to her right arm, and "had not regained full function of her arm during her two-day hospital stay." *Id.* at 440, ¶ 4, 79 P.3d 1050. Her physician, however, "refused to speculate on whether that impairment would be temporary, protracted, or permanent." *Id.* Noting that the State "presented no evidence that the injury itself had exposed [the victim] to a reasonable risk of death or had caused her to suffer serious or permanent disfigurement," *id.* at 440, ¶ 5, 79 P.3d 1050, we held it was insufficient to support a finding of serious physical injury because there was "no evidence that [the victim's] injuries had caused her to suffer a sustained impairment of her health or a protracted impairment of the use of her arm," *id.* at 442, ¶ 13, 79 P.3d 1050. Construing A.R.S. § 13–105(39),[1] we explained that the legislature had enacted a tiered sentencing scheme based upon the severity of the injury, and "that the legislature intended serious physical injury to refer to an injury more serious than those injuries justifying a mere nondangerous, class four felony classification." *George*, 206 Ariz. at 441, ¶¶ 8, 9, 79 P.3d 1050 (citations and internal quotations omitted); *see also State v. Martinez*, 220 Ariz. 56, 58, ¶ 10, 202 P.3d 521 (App. 2008) (applying *George* and noting the tiered structure of punishment is based on the severity of the injury).[2]

¶ 16 Similar to the statutory analysis in *George*, we construe the Arizona animal cruelty statute to give meaning to the tiered offenses the legislature created. The legislature has indicated that a person commits cruel mistreatment of an animal if there is evidence of torturing, serious physical injury, or death with protracted suffering. If such evidence is lacking, the legislature has imposed a less severe penalty, a class one misdemeanor, for a person who "inflicts unnecessary physical injury" on an animal. *See* A.R.S. § 13–2910(A)(3).

---

1. Although A.R.S. § 13–105 was later amended for technical reasons, the changes are immaterial to our analysis.

2. In *George*, we also recognized that because the legislature apparently modeled its definition of "serious physical injury" after the Model Penal Code, the legislature intended to describe "drastic harms" and injuries of "extreme gravity." 206 Ariz. at 441, ¶ 12, 79 P.3d 1050 ("The distinction between bodily injury [for simple assault] and serious bodily injury is one of the chief determinants of grading under the assault offense.... This differential [in punishment range] is appropriate in light of the very broad coverage achieved under the lesser requirement and the *extreme gravity of injury* punished under the greater." (quoting Model Penal Code and Commentaries § 211.1 cmt. 3 (1980))). Those same considerations apply to the animal cruelty statute.

¶ 17 The State's presentation of evidence and its arguments to the juvenile court, as well as its position on appeal, focused solely on the theory that Jessie created a reasonable risk of death simply by shooting the cat with a pellet gun. The juvenile court, however, was unable to determine the effect of the pellet gunshot. Although a reasonable inference can be drawn that the cat was *injured in some manner* by the shot from the pellet gun, *see infra* ¶ 21, on this record the same inference cannot be drawn to establish, beyond a reasonable doubt, that Jessie created a reasonable risk of death by shooting the cat. *See George*, 206 Ariz. at 442, ¶ 14, 79 P.3d 1050 ("[A]lthough a gunshot wound may, in most circumstances, result in severe injuries that seriously impair the victim's health, the mere fact that a victim has been shot, without more, does not warrant that finding."). Without evidence establishing the seriousness of the injury, the State necessarily failed to prove an element of the offense. *See id.* at ¶ 5 (explaining that "the state presented no evidence that the *injury itself* had exposed [the victim] to a reasonable risk of death") (emphasis added); *see also A.J.R. v. State*, 3 N.E.3d 1000, 1006–07 (Ind. Ct. App. 2014) (holding, in a juvenile adjudication for animal cruelty, that the Indiana statute "[could] not be fairly interpreted so as to include *any* injury that results in the death of the animal," but that "the *type* of injury is a key component of and necessary condition to making a determination of [cruelty].") (citation omitted). Because no reasonable evidence in this record establishes that Jessie caused an unnecessary serious physical injury to the cat, the adjudication for cruel mistreatment of an animal cannot be sustained.

¶ 18 The dissent would *sua sponte* raise accomplice liability as a basis for finding that the State met its burden of proving that Jessie committed cruel mistreatment. *See infra* ¶ 29. The dissent relies on the well-recognized legal principle in civil cases that we may affirm the superior court's decision "even if the trial judge was right for the wrong reasons." *See infra* ¶ 28. But the dissent cites no authority suggesting such principle may be applied to affirm a criminal conviction on a theory never raised in the juvenile court. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation."); *see also State in Interest of D.B.*, 289 P.3d 459, 471, ¶ 44 (Utah 2012) (noting that the Sixth Amendment is satisfied when a defendant (1) receives adequate notice that the State is pursuing accomplice liability and (2) the State has not affirmatively misled the defendant) (internal citations omitted). By intentionally narrowing its theory of proof, *see supra* ¶¶ 10, 12, the State necessarily rejected a theory of accomplice liability. Applying a new theory of criminal liability on appeal, *sua sponte*, to sustain the delinquency adjudication would violate Jessie's constitutional right to due process. *Cf. State v. Alvarado*, 178 Ariz. 539, 544, 875 P.2d 198 (App. 1994) (deciding in the context of a bench trial "whether the verdict was based on the right or the wrong legal theory argued by the State would have the appearance of giving the State a second try at convicting Appellant without giving Appellant the due process of a second trial").

¶ 19 Moreover, we cannot affirm an adjudication "when there is a complete absence of probative facts to support a judgment." *Kyle M.*, 200 Ariz. at 448–49, ¶ 6, 27 P.3d 804. According to the officer, Jessie admitted photographing the mutilation of the cat; however, the State did nothing to suggest it was relying on the admission as an alternative theory of proof to establish accomplice liability. *Cf. State v. Woods*, 168 Ariz. 543, 544, 815 P.2d 912 (App. 1991) ("In Arizona, being an accomplice is not a separately chargeable offense; it is merely a theory that the state may utilize to establish the commission of a substantive criminal offense."). Nor did the State seek to prove that Jessie's friend committed cruel mistreatment as a principal by mutilating the cat while it was still alive, as there was no evidence presented as to when the mutilation occurred. *See State v. Hickle*, 133 Ariz. 234, 238, 650 P.2d 1216 (1982) ("[T]o prove accomplice liability, the State must show that [the defendant] participated or aided the planning or commission of the crime.... His presence at the scene of the crime is not necessarily enough."). Nor did the juvenile court give

any indication it was relying on Jessie's act of photographing the mutilation to find that he was an accomplice to the cruel mistreatment offense.

¶ 20 On this record, the evidence presented by the State was insufficient to prove, beyond a reasonable doubt, that Jessie intentionally or knowingly committed cruel mistreatment in violation of A.R.S § 13–2910(A)(9).

### B. Lesser–Included Offense

■ ¶ 21 Regardless of the extent of the injury caused, Jessie may nonetheless be criminally liable for animal cruelty under the lesser-included offense of A.R.S. § 13–2910(A)(3), a class one misdemeanor.[3] That subsection prohibits intentionally, knowingly, or recklessly inflicting unnecessary physical injury on an animal. "Whether an offense is a lesser-included offense of another crime involves a matter of statutory interpretation which we review de novo." *In re James P.*, 214 Ariz. 420, 423, ¶ 12, 153 P.3d 1049 (App. 2007).

■ ¶ 22 A crime is a lesser-included offense of another crime if "it is, by its very nature, always a constituent part of the greater offense, or whether the charging document describes the lesser offense even though it does not always make up a constituent part of the greater offense." *State v. Brown*, 195 Ariz. 206, 207, ¶ 5, 986 P.2d 239 (App. 1999). "[F]or one offense to be included within another, greater offense, the greater must have all the elements of the lesser plus at least one additional element." *James P.*, 214 Ariz. at 424, ¶ 19, 153 P.3d 1049. To sustain a conviction of a lesser-included offense, "[i]t must also be shown that the lesser cannot be committed without always satisfying the corresponding elements of the greater." *Id.*

¶ 23 The elements of the felony, cruel mistreatment, are (1) intentionally or knowingly, (2) subjecting an animal (mammal, bird, reptile or amphibian) to, (3) unnecessary serious physical injury (including torture) or killing

an animal in a manner that causes protracted suffering to the animal. A.R.S. § 13–2910(A)(9), (H)(1) and (2). The elements of the class one misdemeanor, animal cruelty by infliction of unnecessary physical injury, are (1) intentionally, knowingly, or recklessly, (2) inflicting upon an animal (mammal, bird, reptile or amphibian), (3) unnecessary "impairment of physical condition." A.R.S. §§ 13–2910(A)(3), (H)(1), –105(33). Because inflicting an unnecessary impairment of physical condition is always a constituent part of the greater offense of cruel mistreatment involving unnecessary serious physical injury, and because cruel mistreatment includes all elements of subsection (A)(3) plus at least one additional element (serious physical injury including torture, or killing with protracted suffering), it is a lesser-included offense of A.R.S. § 13–2910(A)(9).

¶ 24 A trier of fact could reasonably infer that shooting the cat was unnecessary, because Jessie admitted he shot the cat for no reason other than it was "black" and a "stray." A trier of fact could also find that shooting the cat with a pellet gun necessarily caused some type of physical impairment. Thus, we conclude there was sufficient evidence to find beyond a reasonable doubt that Jessie committed animal cruelty, in violation of A.R.S. § 13–2910(A)(3). *See* Ariz. R. Crim. P. 31.17(d) (stating that when an appellate court finds that the evidence introduced at trial is not legally sufficient to support a conviction, but is legally sufficient to establish the defendant's guilt of a lesser-included offense, it may modify the judgment to reflect a conviction for the lesser-included offense and remand for resentencing); *George*, 206 Ariz. at 442, ¶ 14, 79 P.3d 1050 (modifying judgment because evidence was insufficient to support the conviction for aggravated assault causing serious physical injury but was sufficient to support the lesser-included offense of assault causing temporary but substantial impairment).

### CONCLUSION

¶ 25 Based on the foregoing, we conclude that insufficient evidence exists to establish

---

**3.** The State does not raise this argument on appeal; however, pursuant to Ariz. R. Crim. P. 31.17(d), we may consider whether section 13–2910(A)(3) is a lesser-included offense of section

13–2910(A)(9) and whether the evidence was legally sufficient to establish that Jessie committed the purported lesser-included offense.

that Jessie committed an act of cruel mistreatment; however, we modify the juvenile court's delinquency adjudication to reflect that Jessie is delinquent for violating A.R.S. § 13–2910 (A)(3), as a class one misdemeanor.

KESSLER, J., separately concurring in part and dissenting in part:

¶ 26 I concur with the majority's construction of the statutory scheme at issue and concur that if we concluded the superior court erred, we could modify the adjudication to reflect that Jessie is delinquent for violating A.R.S. § 13–2910(A)(3). However, for the following reasons, I respectfully dissent that the superior court erred in adjudicating Jessie as delinquent of a felony for cruel mistreatment of an animal.

¶ 27 The facts are relatively undisputed. Jessie shot a small, stray kitten with a pellet gun. The superior court correctly held that the State did not prove the shot killed the kitten because there was no evidence presented to that effect. Shortly after the shooting, another person eviscerated the kitten, essentially cutting into its body, taking out its organs, and cutting it into two. There is no evidence Jessie physically participated in the evisceration; instead he photographed the evisceration and posted the photo record on social media, telling the police later that he found the evisceration nasty and interesting.

¶ 28 We view the record in the light most favorable to affirming the trial court. *State v. Rose*, 231 Ariz. 500, 515, ¶ 72, 297 P.3d 906 (2013) (citation omitted). We will affirm if, on any reasonable view of the evidence, we can deduce facts which on any theory of the law would sustain the judgment. *Land–Air, Inc. v. Parker*, 103 Ariz. 1, 2, 435 P.2d 838 (1967) (citation and quotation omitted). We will affirm even if the trial judge was right for the wrong reasons. *City of Phoenix v. Geyler*, 144 Ariz. 323, 330, 697 P.2d 1073 (1985) (citation omitted). We also presume that the judge knows and properly applies the law. *State v. Ramirez*, 178 Ariz. 116, 128, 871 P.2d 237 (1994) (citation omitted).

¶ 29 In light of these standards of review, the record supports the adjudication of Jessie as an accomplice to the evisceration. Given that the court found the State had not proven the shot killed the kitten, this means the kitten was still alive when Jessie's friend disemboweled it while Jessie was photographing her do it. This clearly meets the requirements of torturing the cat, inflicting unnecessary serious physical injury on the cat or killing the cat in a manner that caused protracted suffering. A.R.S. § 13–2910(A)(9), (H)(2). By filming the crime, Jessie was an accomplice. A.R.S. §§ 13–301(2)–(3); – 303(B)(2); *Harris v. State*, 790 P.2d 1379, 1383 (Alaska App. 1990).

¶ 30 In so holding, I recognize that the State did not allege that Jessie could be liable as an accomplice or propose a theory of the case on the basis that the kitten was killed in a manner that caused protracted suffering through the evisceration. However, there is no right to notice of how the State will prove liability and no requirement that charging documents allege an accomplice theory of liability. *State v. Tison*, 129 Ariz. 526, 538, 633 P.2d 335 (1985) (citations omitted); *State v. McInelly*, 146 Ariz. 161, 162–63, 704 P.2d 291 (App. 1985).

¶ 31 Accordingly, I would affirm the superior court's decision.