IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA ex rel. WILLIAM
MONTGOMERY, Maricopa County Attorney,
*Petitioner*,

*v.*

THE HONORABLE MARK H. BRAIN,
Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for
the County of MARICOPA,
*Respondent Judge*,

SHUNDONG HU,
*Real Party in Interest*.

No. 1 CA-SA 17-0186
FILED 5-24-2018

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2017-100746-001
The Honorable Mark H. Brain, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Daniel Strange
*Counsel for Petitioner*

The Law Offices of David Michael Cantor, PC, Phoenix
By Michael Alarid, III
*Counsel for Real Party in Interest*

---

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

---

**B R O W N**, Judge:

¶1        In this special action, we hold that a person who uses a dangerous instrument in committing an animal cruelty offense may not be sentenced as a dangerous offender.  Because we reject the State's argument that it may pursue enhancement of an animal cruelty crime as a dangerous offense, we accept special action jurisdiction but deny relief.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Police responded to a report of animal cruelty.  A witness stated she heard a dog crying and went to her apartment complex's courtyard to see where the noise was coming from.  She observed Shundong Hu in his apartment using a rod to hit a dog that was inside a pet enclosure.  When police entered Hu's apartment, they saw a puppy with a bleeding mouth.  The dog was taken to an animal care center for treatment and the medical records indicated the dog suffered "[c]ranial trauma."  Police obtained a warrant the next day to search Hu's apartment and discovered a metal rod under the bed that "appeared to have blood and dog hair on it."

¶3        As relevant here, the State charged Hu with intentionally or knowingly subjecting an animal to cruel mistreatment, a class 6 felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13-2910(A)(9).  The State also alleged the crime was a dangerous offense because it "involved the discharge, use, or threatening exhibition of a pole and/or rod, a deadly weapon or dangerous instrument, in violation of A.R.S. §§ 13-105 and 13-704."

¶4        Hu moved to dismiss the dangerousness allegation, asserting that as a matter of law "a dangerous offense cannot be committed against an animal."  He did not dispute that the metal rod could constitute a dangerous instrument; instead, he argued the legislature's inclusion of the phrase "on another person" in the statutory definition of dangerous offense, A.R.S. § 13-105(13), means a dangerous offense may be committed only against a person, not an animal.  The State countered that the plain

language of § 13-105(13) indicates that a sentencing enhancement based on the use of a dangerous instrument is not limited to circumstances involving "another person."

¶5        Focusing on the definition of dangerous instrument, the superior court granted Hu's motion, explaining as follows:

> There are two ways to interpret the dangerous instrument definition: (1) it could be limited to items being used in a way readily capable of causing death or serious physical injury *to a person*; or (2) it could encompass items being used in a way readily capable of causing death or serious physical injury *to anything*. Under the latter interpretation, poisoning someone's $1000 exotic fish tank with a gallon of bleach would constitute the crime of criminal damage, a class 6 dangerous felony. Surely the legislature did not intend such results.

¶6        The State petitioned for special action, asserting the superior court erred by dismissing the allegation of dangerousness. We have accepted jurisdiction because the State has no adequate remedy on appeal and the petition presents a legal issue of statewide importance. *See* Ariz. R.P. Spec. Act. 1(a); *State ex rel. Montgomery v. Rogers*, 237 Ariz. 419, 421, ¶ 5 (App. 2015).

## DISCUSSION

¶7        We review the superior court's interpretation of statutes de novo. *State v. Gates*, 243 Ariz. 451, 453, ¶ 7 (2018). "In interpreting a statute, our goal is to give effect to the legislature's intent." *Id.* "If the statutory language is unambiguous, we apply it as written without further analysis." *State v. Jurden*, 239 Ariz. 526, 530, ¶ 15 (2016). Because "this case involves the intersection of multiple statutes, we construe them together, seeking to give meaning to all provisions." *State v. Francis*, 243 Ariz. 434, 435, ¶ 6 (2018) (citation omitted). If we conclude the statutes are reasonably susceptible to more than one interpretation, "we consider other factors, including 'the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose.'" *Glazer v. State*, 237 Ariz. 160, 163, ¶ 12 (2015) (quoting *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991)).

## A. Construction of Related Statutory Definitions

¶8　　　　As provided in A.R.S. § 13-704, the legislature has mandated increased punishment for a person convicted of a felony offense that is also considered "dangerous." A dangerous offense is "an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument _or_ the intentional or knowing infliction of serious physical injury on another person." A.R.S. § 13-105(13) (emphasis added). A "person" is defined in pertinent part as a "human being." A.R.S. § 13-105(30). A dangerous instrument is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12). "'Serious physical injury' includes physical injury that creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-105(39). Finally, "'[c]ruel mistreatment' means to torture or otherwise inflict unnecessary serious physical injury on an animal or to kill an animal in a manner that causes protracted suffering to the animal." A.R.S. § 13-2910(H)(2).

¶9　　　　The State contends the word "or," emphasized above in the definition of dangerous offense, is clear in the sense that it must be read in the disjunctive, meaning the second phrase "on another person" does not apply to the first phrase involving a dangerous instrument. In other words, the State argues the two phrases unambiguously constitute independent clauses, meaning that when a dangerous instrument is used in committing a felony, the State need only prove a dangerous instrument was discharged, used, or threatened as part of the felony offense, regardless of whether it was targeted against a person, an animal, or any other living organism. Read in isolation, the State's proffered construction is defensible. *See State v. Bowsher*, 225 Ariz. 586, 587, ¶ 7 (2010) ("The word 'or' generally means '[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things.'" (quoting *Black's Law Dictionary* 1095 (6th ed. 1990))). However, we must construe the meaning of dangerous offense in light of its related definitions to achieve harmony and thereby discern legislative intent. *See id.* at 589, ¶ 14 (recognizing that in construing multiple statutes, we seek to harmonize all the provisions).

¶10　　　　Like the State, Hu does not offer an interpretation that considers each of the definitions affecting the meaning of dangerous offense. He focuses solely on the definition of dangerous instrument, asserting that "the only way" to interpret this provision is to add the words

"to a person" at the end of the definition. Otherwise, he contends, the statute would be interpreted to cover harm to anything, which would require rewriting the statutory language and lead to absurd results.

¶11    Taking into account the parties' competing arguments, we must find the most sensible reading of the definition of dangerous offense that is in harmony with the definitions of dangerous instrument and serious physical injury, as well as other related statutes, including the dangerous offense and animal cruelty statutes. *See id.* In doing so, we note that our supreme court has recognized that not every crime involving the use of a dangerous instrument may be enhanced as a dangerous offense. *See State v. Orduno*, 159 Ariz. 564 (1989) (exempting felony driving under the influence offenses from dangerous offense enhancements).

¶12    The definitions of dangerous instrument and serious physical injury are silent as to whether they apply in situations involving non-humans. Although both terms are "general" in nature, that does not mean they encompass every conceivable crime. *Cf. Phillips v. O'Neil*, 243 Ariz. 299, 302, ¶ 11 (2017) (noting that the "general terms" canon of construction "is based on the reality that it is possible and useful to formulate categories (e.g., 'dangerous weapons') without knowing all the items that may fit—or may later, once invented, come to fit—within those categories" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 101 (2012))). Dangerous instrument and serious physical injury are general in the sense they are broadly defined and would presumably include many items or injuries that could fall within those general categories. But the legislature did not use the same type of language to define the scope of when those two categories apply; instead of defining a general class, the legislature limited dangerous instrument and serious physical injury to specific circumstances, failing to further specify who or what must be the target of the dangerous instrument or the recipient of the serious physical injury. Accordingly, the definitions of dangerous instrument and serious physical injury are reasonably susceptible to more than one interpretation as to whether they apply to offenses directed toward non-humans, which also means the definition of dangerous offense can be reasonably interpreted in more than one way.

¶13    The State asserts that if "on another person" were to modify the first clause of A.R.S. § 13-105(13), then no crime could be charged as a dangerous offense absent "direct contact with another person." But the State construes the word "on" too narrowly, as it can function to identify a variety of situations. *See, e.g.*, *Webster's Ninth New Collegiate Dictionary* 823-24 (1988) (giving the following definitions of "on": (1) "used . . . to indicate

position in close proximity with . . . <stay [on] your opponent>"; (2) "used . . . to indicate the object of collision, opposition, or hostile action . . . <pulled a gun [on] me>"; and (3) "used . . . to indicate destination or the focus of some action, movement, or directed effort <crept up [on] him>"). These varied definitions also defeat the State's arguments that "[o]ne does not discharge nor threateningly exhibit a dangerous instrument 'on' a person" and that "a dangerous instrument would be discharged *at* another person or threateningly exhibited *to* another person." Given the broad meaning of "on," there is no grammatical inconsistency in the language the legislature used to define a dangerous offense.

¶14        Moreover, the State's interpretation that "on another person" would not apply to the first clause absent direct contact with another person is inconsistent with established case law. In *State v. Borbon*, 146 Ariz. 392 (1985), the defendant struck the door of a cashier booth with a tire iron so violently the cashier thought the bulletproof glass door might break. 146 Ariz. at 394, 397. Our supreme court concluded sufficient evidence existed to support the defendant's conviction of attempted armed robbery based on the use or threatened use of a dangerous instrument because the defendant was "readily capable" of causing physical injury and the cashier was afraid the defendant would break the glass and harm him. *Id.* at 397. In *State v. Gatliff*, 209 Ariz. 362 (App. 2004), the defendant was convicted of arson of an occupied structure, which requires proof that a human being is either present or likely to be present when the fire occurs. 209 Ariz. at 362-63, 365, ¶¶ 1, 14. We held that the use of fire, a dangerous instrument, is an essential element of arson of an occupied structure and thus dangerousness is inherent in the crime. *Id.* at 366, ¶ 18.

¶15        The State also ignores that threatened exhibition of a deadly weapon or dangerous instrument can occur without any direct contact. Because the definitions of dangerous instrument, dangerous offense, and serious physical injury are reasonably susceptible to more than one interpretation, we turn to secondary principles of statutory construction.

## B.        Statutory Purposes

¶16        We consider the policy behind these statutes and the evils they were designed to remedy. *State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 101, ¶ 13 (2014). The legislature has determined that crimes involving deadly weapons or dangerous instruments are to be punished more severely than other crimes, particularly when the crime involves the potential of causing death or serious injury to human life. *See State v. Bly*, 127 Ariz. 370, 372 (1980) ("[T]he potential for serious bodily injury or loss

of human life arises when a crime is committed with a dangerous weapon. The crime itself is more reprehensible and for that reason a crime committed with a dangerous weapon or instrument shall be punished more severely . . . ."); *cf. Orduno*, 159 Ariz. at 566 ("The clear intent of [the dangerous offense statutes] is to enhance sentencing when the use of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury *increases* the seriousness and dangerousness of the underlying crime.").

¶17            As set forth in A.R.S. § 13-704(A), "a person who is at least eighteen years of age or who has been tried as an adult and who stands convicted of a felony that is a dangerous offense" must be sentenced in accordance with the increased prison terms outlined in § 13-704.  For instance, a first-time conviction for a dangerous, class six felony offense requires a presumptive sentence that is more than double that for a first-time conviction for a non-dangerous, class six felony offense.  *Compare* A.R.S. § 13-702(D) (one year), *with* A.R.S. § 13-704(A) (two and one-quarter years).  The conviction will also have a greater impact on subsequent crimes for which the defendant is convicted based on having a prior historical dangerous felony conviction.  A.R.S. § 13-704(B)-(E).  Further, the defendant is not eligible "for suspension of sentence, probation, pardon or release from confinement on any basis, except as specifically authorized."  A.R.S. § 13-704(G).  Finally, a defendant cannot seek to set aside the conviction. *See* A.R.S. § 13-907(E)(1).

¶18            Two purposes of Arizona's Criminal Code are "[t]o give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction" and "[t]o differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each."  A.R.S. § 13-101(2), (4).  If it was the legislature's intent, as the State urges, to enhance animal cruelty offenses by allowing the State to allege dangerousness, the legislature has not given fair warning of the enhanced sentencing and the consequences related thereto.  *See* A.R.S. § 13-104 ("The general rule that a penal statute is to be strictly construed does not apply to this title, but the provisions herein must be construed according to the fair meaning of their terms to promote justice and effect the objects of the law, including the purposes stated in § 13-101.").

¶19            Moreover, the State's interpretation of the statute does not differentiate on reasonable grounds between serious and minor offenses and the proportionate penalties for each.  The animal cruelty statutes were structured to have tiered offenses.  *In re Jessie T.*, 242 Ariz. 556, 559, ¶ 16 (App. 2017).  The legislature has classified cruel mistreatment as a felony

offense, whereas the lesser-included offense of intentionally, knowingly, or recklessly inflicting unnecessary physical injury to an animal is a class one misdemeanor. *Id.* at 561, ¶ 23; A.R.S. § 13-2910(A)(3), (G). Thus, the legislature already has accorded a more severe designation and punishment for a more egregious act against an animal. By classifying § 13-2810(A)(9) as a felony because it causes unnecessary serious physical injury on an animal, it is unlikely the legislature intended to increase the punishment for cruel mistreatment beyond classifying it as a felony, distinguishing it from less-serious animal cruelty offenses.

¶20 By comparison, other states, such as California and Pennsylvania, have adopted provisions in similar contexts that include more precise notice of how deadly weapon or dangerous instrument sentencing enhancements may be applied. *See* Cal. Penal Code § 12022(a)(1) (stating that a person using a firearm in the commission of a felony "shall be punished by an additional and consecutive term of imprisonment"); 204 Pa. Code § 303.10(a)(1) (permitting sentence enhancement "[w]hen a court determines that the offender possessed a deadly weapon during the commission of the current conviction offense"); *People v. Smith*, 57 Cal. Rptr. 3d 926, 929 (Cal. Ct. App. 2007) ("The language of [the statute] prohibits the use of a deadly or dangerous weapon 'in the commission of *a felony* or attempted felony,' and states that an additional and consecutive one year term *shall* be imposed for its violation. . . . Cruelty to an animal . . . is a felony."); *Pennsylvania v. Hackenberger*, 795 A.2d 1040, 1047, ¶ 22 (Pa. Super. Ct. 2002), *aff'd*, 836 A.2d 2 (Pa. 2003) ("Here, it was appellant's possession of a firearm and use of a firearm in the furtherance of a crime [(cruelty to animals)] that triggered the application of the deadly weapon enhancement provisions of the Sentencing Guidelines."). If the Arizona Legislature was inclined to do so, it could have expressly stated that the dangerous offense definition applies to all felonies where a dangerous instrument or deadly weapon is discharged, used, or threatened, but it has not. *See State v. Mott*, 187 Ariz. 536, 541 (1997) ("[T]he legislature is responsible for promulgating the criminal law.").

## C. Sensible Construction

¶21 We strive to construe statutes "sensibly to avoid reaching an absurd conclusion." *Harris*, 237 Ariz. at 101, ¶ 13. "A result is absurd if it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion." *State v. Estrada*, 201 Ariz. 247, 251, ¶ 17 (2001) (internal quotation omitted). Limiting application of the dangerous offense enhancement to situations where a human is the target or potential target

of a crime involving a deadly weapon or dangerous instrument avoids absurd conclusions.

¶22        For example, as the superior court noted, a person may be charged with criminal damage, a class six felony, for recklessly defacing or damaging property of another valued at $1,000 or more.  *See* A.R.S. § 13-1602(A)(1), (B)(4).  That type of crime could arise when a person recklessly sprays herbicide that drifts to neighboring property and kills plants valued at $1,000 or more.  Under the State's interpretation, it could properly allege dangerousness.  Similarly, a person who recklessly uses fireworks, destroying vegetation worth at least $1,000 would also be subject to an enhanced sentence under A.R.S. § 13-704, regardless of whether any human faced harm as a result of the crime.  Recklessly using an ax to destroy a valuable tree would also be subject to enhancement as a dangerous offense.  On the other hand, if a person destroyed valuable plants by uprooting them with his hands, or by cutting off the water supply, the State would be unable to charge the crime as a dangerous offense because no deadly weapon or dangerous instrument was involved.

¶23        Additionally, one could cause serious physical injury to an animal with his fists but the State could not seek an enhancement based on dangerousness because it is limited to "the intentional or knowing infliction of serious physical injury on another person."  A.R.S. § 13-105(13); *see State v. Gordon*, 161 Ariz. 308, 311 (1989) ("Because the Arizona statute increases the punishment for the crime if the defendant either uses a dangerous instrument or causes serious harm, no purpose exists for allowing the jury to find that body parts are dangerous instruments just because they caused serious bodily harm.").  But if a stick caused the injury, instead of fists, the person hitting the animal with the stick would be subject to a dangerousness enhancement.  Moreover, taking at face value the State's contention that the legislature sought to treat equally humans and animals, the State's construction of the statutes would not do that—one who punches a person's eye, causing blindness, would be subject to an enhancement while one who punches an animal and causes the same injury would not.

¶24        Restricting application of the dangerousness enhancement to humans does not yield irrational or unnatural results because the harm resulting from various crimes is treated similarly under the law.  If a person uses a deadly weapon or dangerous instrument in any way to assault another person, then it could be charged as a dangerous offense.  And if no deadly weapon or dangerous instrument is involved, but a person punches someone so hard it causes serious physical injury, then the attacker's

conduct plainly fits within the dangerous offense definition. *See Gordon*, 161 Ariz. at 311. Unlike the scenarios involving plants, animals, or other living organisms, these statutes work in harmony when they are applied to situations involving actual or potential harm to humans. *See Bowsher*, 225 Ariz. at 589, ¶ 14 ("When construing two statutes, this Court will read them in such a way as to harmonize and give effect to all of the provisions involved.").

¶25 Our conclusion is consistent with the only other reported decision that has squarely addressed, based on similar statutes, whether a deadly weapon sentencing enhancement applied to an animal cruelty offense. *See Prichard v. Texas*, 533 S.W.3d 315, 317 (Tex. Crim. App. 2017). In Texas, a sentence may be enhanced if the defendant "used or exhibited [a deadly weapon] during the commission of a felony offense." *Id.* at 320 (internal quotation omitted). "Deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B). Cruelty to non-livestock animals is "intentionally, knowingly, or recklessly . . . tortur[ing] an animal or in a cruel manner kill[ing] or caus[ing] serious bodily injury to an animal." Tex. Penal Code § 42.092(b)(1). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(46). In *Prichard*, the defendant was convicted of cruelty to a non-livestock animal. 533 S.W.3d at 317. The state alleged, and the jury found, that the crime was a deadly offense because Prichard used a shovel and water, either individually or together, to harm his dog. *Id.* at 317-18. Prichard appealed the sentencing enhancement, "argu[ing] that a deadly weapon finding is improper when the only thing injured or killed as a result of a defendant's criminal conduct is an animal rather than a human being." *Id.* at 317. An intermediate appellate court upheld the deadly weapon finding but the Texas Court of Criminal Appeals reversed, concluding "that a deadly weapon finding may be made for human victims only." *Id.*

¶26 Based on the foregoing analysis, we conclude that the legislature's purpose in drafting the dangerous offense definition and the related statutes was to enhance crimes as "dangerous offenses" to protect human life. Accordingly, we hold that the State cannot charge a crime as a dangerous offense unless it involves the discharge, use, or threatened exhibition of a deadly weapon or dangerous instrument against another person.

## CONCLUSION

**¶27**        We affirm the superior court's order granting Hu's motion to dismiss the State's allegation of dangerousness because the use of a dangerous instrument in the context of animal cruelty does not qualify as a dangerous offense under A.R.S. § 13-105(13).   We therefore accept jurisdiction but deny relief.



AMY M. WOOD • Clerk of the Court
FILED:  AA